## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

Lisa Fucco, an individual,

      Plaintiff.

v.

KidsCare Therapy of Colorado, LLC d/b/a KidsCare Home Health, A Texas limited liability corporation

      Defendant.

_____

## COMPLAINT AND REQUEST FOR JURY TRIAL
_____

Lisa Fucco, by and through her counsel, Thomas Mitchiner, Mitchiner Law LLC, and Steven L. Murray, Murray Law LLC, asserts the following allegations and claims against the Defendant, KidsCare Therapy of Colorado, LLC d/b/a KidsCare Home Health [Defendant or KidsCare].

## INTRODUCTION

This is an employment discrimination case arising from the Defendant's intentional discriminatory treatment of Ms. Fucco, based on disability, and for retaliating against Ms. Fucco for engaging in protected activity, in violation of Americans with Disabilities Act of 1990, the American with Disabilities Amendments Act of 2008, as amended, 42 U.S.C. § 12112 [ADA] and the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402 [CADA]. In addition, Ms. Fucco asserts a state law claim of promissory estoppel against Defendant.

At all times in issue, Fucco was fully capable of performing her duties with KidsCare.

## I.  PARTIES

1.      Lisa Fucco [Fucco] is a disabled female, United States citizen, and resident of Colorado.

2.      KidsCare is a Texas limited liability corporation operating in Colorado with offices in Colorado.

3.      Fucco resides in Colorado, and she worked for the Defendant, within the judicial district of this Court.

4.      The Defendant conducts business within the judicial district of this Court.

5.      The Defendant employs more than 15 persons.

## II.      JURISDICTION AND VENUE

6.      Jurisdiction is asserted pursuant to Americans with Disabilities Act of 1990, the American with Disabilities Amendments Act of 2008, as amended, 42 U.S.C. § 12117(a).

7.      At all times material herein, Fucco was an employee of Defendant, as defined by the ADA, and Defendant was an employer as defined by the ADA.

8.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343 (a) (3) (4), and 42 U.S.C. § 12117(a).

9.      This court has jurisdiction of Fucco's state law claims pursuant to 28 U.S.C. § 1367(a).

10.    At all times material herein, Fucco was an employee of Defendant as defined by the CADA, and Defendant was an employer as defined by the CADA.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) (c) and 42 U.S.C. § 12117(a).

### III.    ADMINISTRATIVE PROCEDURES

12.    Prior to filing this action, Fucco timely, properly, and lawfully exhausted all required administrative procedures and remedies.

13.    Fucco filed a timely charge of unlawful disability discrimination and retaliation, actions in violation of the ADA, with the United States Equal Employment Opportunity Commission [EEOC] and the Colorado Civil Rights Division [CCRD]. [EEOC Charge No. 32A-2019-00779; CCRD Charge No. E2000006194 and FE2020051920].

14.    On June 24, 2020, the CCRD mailed a Notice of Right to Sue letter to Fucco

15.    On September 2, 2020, the EEOC mailed a Notice of Right to Sue letter to Fucco.

16.    This action is timely filed because it is filed within ninety days of Fucco's receipt of the Notice of Right to sue letter issued by the EEOC and CCRD.

### IV.    NATURE OF THE CASE

17.    This action seeks legal and equitable relief for Defendant's intentional and unlawful disability discrimination against Fucco, actions in violation of the ADA and CADA.

18.    Further, this action seeks relief to enforce Defendant's promise to Fucco regarding the company vehicle.

## V.  GENERAL ALLEGATIONS

19.    On or about February 28, 2014, Fucco's doctors diagnosed her with stage 4B Hodgkin's Lymphoma, stage 2B Leukemia, and stage 2B Sarcoma [cancer].

20.    Fucco received treatment for the cancer from 2014 through 2018.

21.    During the first few months of her treatment, Fucco's doctors treated her with the chemotherapy regimen ABVD, which is a combination of the chemotherapy drugs Adriamycin, Bleomycin, Vinblastine and Dacarbazine [ABVD].

22.    Because of the chemotherapy, Fucco developed peripheral neuropathy, which is damage to the peripheral nerves, this condition causes Fucco to suffer pain, and also impacts her ability to walk, lift, touch and feel.

23.    The combination of the chemotherapy and the medication has impacted and continues to impact Fucco's short term memory and causes her daily pain.

24.    Fucco began working for KidsCare in December 2018.

25.    Prior to being hired by KidsCare, Fucco informed it of her disabilities.

26.    KidsCare provides in home therapy and nursing services to children located in the Front Range and nationally.

27.    KidsCare's customers/clients are the parents of the children.

28.    Fucco worked as a Community Relations Coordinator.

29.    As a Community Relations Coordinator, Fucco sold KidsCare's services to its customers.

30.    Fucco worked out of KidsCare's offices in Fort Collins, Colorado.

31.     Fucco's earned a salary of $62,000.00 per year and she also earned commissions.

32.     In addition to the salary and the commissions, KidsCare provided Fucco with a company vehicle for which it required her to pay $400.00 per month.

33.     Throughout her time with KidsCare, Fucco was a highly productive employee.

34.     Ashley Reinert [Reinert], KidsCare's Director of Marketing, supervised Fucco's work. Reinert worked at KidsCare's Denver offices.

35.     Reinert's mother, Jeannette Reinert [Jeannette], also works for KidsCare as Vice President of Marketing.

36.     Prior to being hired by KidsCare, Fucco had purchased a 2019 Toyota Corolla. Fucco was making payments of $400.00 per month on the Corolla

37.     However, KidsCare required Fucco to use its 2019 Nissan Murano. In addition, KidsCare required Fucco to pay $400 a month to utilize the vehicle, which KidsCare automatically deducted from her paycheck.

38.     KidsCare wanted Fucco to use its vehicle because it had technology to permit KidsCare to track Fucco to determine if she was performing her job.

39.     KidsCare, through Reinert, informed Fucco that she would be allowed to keep the vehicle even if she no longer worked for KidsCare.

40.     Because Fucco was paying for the vehicle, it seemed reasonable to Fucco that she would be allowed to keep the car even if she left KidsCare.

41.     Fucco could not afford two car payments, so she relied on Reinert's promise that she could keep the Nissan Murano after she left KidsCare, and she voluntarily had her Corolla repossessed.

42.     From December 2018 through May 2019, Fucco performed her duties satisfactorily and received high marks from KidsCare.

43.     Fucco's 30-day and 90-day reviews were positive, and she had never been written up.

44.     Despite Fucco's performance, KidsCare regularly harassed Fucco about her disability.

45.     Throughout her time at KidsCare, Reinert regularly made comments to Fucco concerning Fucco's memory.

46.     Reinert made comments like: (a) "I have taught you this 20 times already," (b) I have trained 8 people and no one has had as much difficulty as you," and (c) "do you think someone with a disability such as yours can do this job?"

47.     Fucco responded to Reinert's comments saying: (a) "with reasonable accommodations I can do this job," (b) "I have been doing my job this entire time" and (c) "I am not ready to give up."

48.     Fucco's reviews did not contain any of these comments.

49.     Reinert discouraged Fucco from speaking to other management at KidsCare, telling Fucco to not "step over her to the Vice President [of Marketing]."

50.     In addition to discriminatory Reinert's comments, Reinert did not provide Fucco with the equipment she needed to perform her job, such as pamphlets, pens, marketing supplies and calendars.

51.     Each time Fucco would ask for this equipment, Reinert would tell her that she does not get them or that there is no reason for her to have them.

52.     A coworker of Fucco's, not of her protected class, asked for the exact same equipment and Reinert provided the equipment to the employee.

53.     Despite, Reinert's threats, Fucco informed Jeannette about the issues with Reinert not providing her with supplies and Jeannette told Fucco she would look into it.

54.     Reinert's comments and actions made Fucco believe that KidsCare wanted her to quit her position.

55.     Fucco continued to perform her job as she had done.

56.     On June 3, 2019, KidsCare terminated Fucco's employment.

57.     KidsCare told Fucco that it was terminating her because she did not fit into the company's plan and because her services were no longer needed.

58.     After discharging Fucco, KidsCare required her to return the company vehicle even though KidsCare had previously promised Fucco that she could keep the vehicle after she left KidsCare.

59.     In order to ensure it received the vehicle, KidsCare employees drove Fucco to her home.

## VI.  CLAIMS FOR RELIEF

### FIRST CLAIM

### [ADA – Disability Discrimination]

60.     Fucco incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

61.     The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

62.     The ADA prohibits the KidsCare from discriminating against Fucco: (1) with respect to her compensation, terms, conditions, or privileges of employment, because of her disability and/or (2) by limiting, segregating, or classifying her in any way, which would deprive, or tend to deprive her of employment opportunities, or otherwise adversely affect her status as an employee, because of her disability.

63.     Fucco is a member of the ADA protected class.

64.     Fucco has a disability pursuant to the ADA. 42 U.S.C. § 12101(1)(A).

65.     Fucco has a physical or mental impairment that substantially limits one or more major life activities of such individual; 42 U.S.C. § 12101(2) (A).

66.     Fucco's mental and physical impairments substantially impact one or more of her life activities because of her short-term memory loss and pain. 42 U.S.C. § 12102(2)(B).

67.     At all times at issue herein, Fucco is a "qualified individual" under the ADA.

68.     Fucco is an individual who, with or without reasonable accommodation: (1) could perform the essential functions of the employment positions she held with the

KidsCare. 42 U.S.C. § 12111(8); and (2) possesses the requisite skill, experience, education and other job-related requirements of the employment positions she held with the KidsCare.

69.     KidsCare engaged in unlawful, direct, and intentional disability discrimination against Fucco because of her disability. KidsCare discharged Fucco because of her protected disability status under the ADA.

70.     KidsCare discriminated against Fucco (1) with respect to her compensation, terms, conditions, or privileges of employment, because of her disability; and/or (2) by limiting, segregating, or classifying her in any way, which would deprive, or tend to deprive her of employment opportunities, or otherwise adversely affect her status as an employee, because of her disability.

71.     KidsCare's unlawful, intentional disability discrimination was created, perpetrated, and/or tolerated by the KidsCare's officials and managers, all having specific knowledge, or reason to know, of the discriminatory actions set forth herein.

72.     KidsCare's treatment of Fucco constitutes willful, intentional, unlawful disability discrimination, in violation of the ADA.

## SECOND CLAIM

### [ADA Disability Discrimination – Regarded as Disabled]

73.     Fucco incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

74.     The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

75.     The ADA's definition of disability and discrimination includes discrimination against a person based on the person being **regarded as** having a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. § 12101(2)(A).

76.     An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that she has been subjected to an action prohibited by the ADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

77.     At all times in issue, Fucco was capable of her performing, and did perform, her duties successfully.

78.     Fucco has a disability under the ADA, and KidsCare regarded her as disabled.

79.     Fucco was in the protected class under the ADA.

80.     KidsCare violated the ADA by taking adverse actions against Fucco, including limiting and segregating or classifying her in a way that adversely affected her opportunities and status within KidsCare, her discharge from employment, and the terms and conditions of her employment, based on her protected status under the ADA.

81.     KidsCare engaged in willful, intentional, unlawful disability discrimination against Fucco based on KidsCare's regarding Fucco having a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. § 12101(2) (A).

**THIRD CLAIM**

**[ADA Disability Discrimination – Record of Disability]**

82.     Fucco incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

83.     The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).

84.     The ADA's definition of disability and discrimination includes discrimination against a person based on the person's **record of** having a physical or mental impairment that substantially limits one or more major life activities of such individual. 42 U.S.C. § 12101(2) (A).

85.     As previously set forth in this complaint, Fucco has a record of mental and/or physical impairments which substantially impact one or more of major life activities. 42 U.S.C. § 12102(2)(B).

86.     At all times at issue herein, Fucco was a "qualified individual" under the ADA. Specifically, Fucco was as an individual who, with or without reasonable accommodation, could perform the essential functions of the employment positions she held with KidsCare. 42 U.S.C. § 12111(8).

87.     KidsCare engaged in willful, intentional, unlawful disability discrimination against Fucco, including but not limited to discriminating against Fucco based on her record of a disability.

**FOURTH CLAIM**

**[ADA Disability Discrimination – Retaliation]**

88.     Fucco incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

89.     The ADA prohibits any person from retaliating against an individual who has opposed any act or practice made unlawful by the ADA. 42 U.S.C. § 12203(a).

90.     Fucco regularly and often told Reinert and KidsCare that the comments made to her concerned her disability and were discriminatory.

91.     On May 17, 2019, Reinert asked Fucco if a person with a disability could do this job, to which Fucco replied yes, I am not ready to give up.

92.     Fucco told Reinert that her comments made her feel uncomfortable and that she felt it was harassment.

93.     Two weeks after this exchange on June 3, 2019, KidsCare terminated Fucco.

94.     A casual connection exists between Fucco's opposition to the discriminatory practices and her termination.

95.     KidsCare engaged in willful, intentional, unlawful disability discrimination against Fucco, in the form of unlawful retaliation for her participation in lawfully protected activity under the ADA. including but not limited to discriminating against Fucco based on her record of a disability.

**FIFTH CLAIM**

**[CADA – Disability Discrimination]**

96.     Fucco incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

97.     CADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." C.R.S. § 24-34-301(2.5).

98.     CADA prohibits the KidsCare from discriminating against Fucco: (1) with respect to her compensation, terms, conditions, or privileges of employment, because of her disability and/or (2) by limiting, segregating, or classifying her in any way, which would deprive, or tend to deprive her of employment opportunities, or otherwise adversely affect her status as an employee, because of her disability.

99.     Fucco is a member of the CADA protected class.

100.    Fucco has a disability pursuant to the CADA. C.R.S. § 24-34-301(2.5).

101.    Fucco has a physical or mental impairment that substantially limits one or more major life activities of such individual. C.R.S. § 24-34-301(2.5).

102.    Fucco's mental and physical impairments substantially impact one or more of her life activities because of her short-term memory loss and pain. C.R.S. § 24-34-301(2.5).

103.    At all times at issue herein, Fucco is a "qualified individual" under the CADA.

104.    Fucco is an individual who, with or without reasonable accommodation: (1) could perform the essential functions of the employment positions she held with the

KidsCare. C.R.S. § 24-34-402; and (2) possesses the requisite skill, experience, education and other job-related requirements of the employment positions she held with the KidsCare.

105. KidsCare engaged in unlawful, direct, and intentional disability discrimination against Fucco because of her disability, and/or, Fucco's protected status as a qualified individual with a disability was a motivating factor in the Healthone's discriminatory treatment of Fucco and the KidsCare's decision to discharge Fucco.

106. KidsCare discriminated against Fucco (1) with respect to her compensation, terms, conditions, or privileges of employment, because of her disability; and/or (2) by limiting, segregating, or classifying her in any way, which would deprive, or tend to deprive her of employment opportunities, or otherwise adversely affect her status as an employee, because of her disability.

107. KidsCare's unlawful, intentional disability discrimination was created, perpetrated, and/or tolerated by the KidsCare's officials and managers, all having specific knowledge, or reason to know, of the discriminatory actions set forth herein.

108. KidsCare's treatment of Fucco constitutes intentional, unlawful disability discrimination, in violation of the CADA.

## SIXTH CLAIM

### [CADA Disability Discrimination – Regarded as Disabled]

109. Fucco incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

110. CADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." C.R.S. § 24-34-301(2.5).

111. CADA's definition of disability and discrimination includes discrimination against a person based on the person being **regarded as** having a physical or mental impairment that substantially limits one or more major life activities of such individual. C.R.S. § 24-34-301(2.5).

112. An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that she has been subjected to an action prohibited by the CADA because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.

113. At all times in issue, Fucco was capable of her performing, and did perform, her duties successfully.

114. Fucco has a disability under CADA, and KidsCare regarded her as disabled, because of her short-term memory loss and the pain she suffers due to her chemotherapy treatment for cancer.

115. Fucco was in the protected class under the CADA.

116. KidsCare violated CADA by taking adverse actions against Fucco, including limiting and segregating or classifying her in a way that adversely affected her opportunities and status within KidsCare, her discharge from employment and the terms and conditions of her employment, based on her protected status under the CADA.

117.    KidsCare engaged in intentional, unlawful disability discrimination against Fucco based on KidsCare's regarding Fucco having a physical or mental impairment that substantially limits one or more major life activities of such individual.

## SEVENTH CLAIM

### [CADA Disability Discrimination – Record of Disability]

118.    Fucco incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

119.    CADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." C.R.S. § 24-34-301(2.5).

120.    CADA's definition of disability and discrimination includes discrimination against a person based on the person's **record of** having a physical or mental impairment that substantially limits one or more major life activities of such individual. C.R.S. § 24-34-301(2.5).

121.    As previously set forth in this complaint, Fucco has a record of mental and physical impairments which substantially impact one or more of major life activities. C.R.S. § 24-34-301(2.5).

122.    At all times at issue herein, Fucco was a "qualified individual" under CADA. Specifically, Fucco was as an individual who, with or without reasonable accommodation, could perform the essential functions of the employment positions she held with KidsCare. C.R.S. § 24-34-402

123.    KidsCare engaged in intentional, unlawful disability discrimination against Fucco, including but not limited to discriminating against Fucco based on her record of a disability.

**EIGHTH CLAIM**

**[CADA Disability Discrimination – Retaliation]**

124.    Fucco incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

125.    CADA prohibits any person from retaliating against an individual who has opposed any act or practice made unlawful by CADA. C.R.S. § 24-34-402(1)(e)(IV)

126.    Fucco regularly and often told Reinert and KidsCare that the comments made to her concerned her disability and were discriminatory.

127.    On May 17, 2019 Reinert asked Fucco if a person with a disability could do this job, to which Fucco replied yes, I am not ready to give up.

128.    Fucco told Reinert that her comments made her feel uncomfortable and that she felt it was harassment.

129.    Two weeks after this exchange on June 3, 2019 KidsCare terminated Fucco.

130.    A casual connection exists between Fucco's opposition to the discriminatory practices and her termination.

**NINETH CLAIM**

**[Promissory Estoppel]**

131.    Fucco incorporates and restates all allegations previously asserted in this Complaint as though fully incorporated herein.

132.    Before starting at KidsCare, Fucco purchased a 2019 Toyota Corolla and paid $400 per month for the vehicle.

133.    At the time KidsCare hired Fucco, it required her to use a company vehicle and to pay $400 per month for the use of the vehicle.

134.    Fucco could not afford two care payments of $400 a month, and informed KidsCare of this.

135.    KidsCare told Fucco that she could keep the company car after she left KidsCare employment.

136.    KidsCare made this promise to induce Fucco to act and/or knowing it would induce Fucco to act.

137.    KidsCare suggested that Fucco have her Toyota car voluntarily repossessed, so that she did not have two car payments.

138.    In reasonable reliance on KidsCare's promise, Fucco had her car voluntarily repossessed because KidsCare promised her that she could keep the KidsCare vehicle even after she left KidsCare.

139.    It was reasonable of Fucco to believe that she could keep the car, without the tracking device after she left KidsCare because she was paying $400 per month for the car.

140.    KidsCare did not let Fucco keep the company car after her termination.

141.    As a result of KidsCare not fulfilling its promise, Fucco did not have a car after her termination.

## VII.   REQUEST FOR RELIEF

WHEREFORE, Lisa Fucco respectfully requests this Court to enter judgment in her favor and against Defendant on all claims for relief asserted in this Complaint and Request for Jury Trial, and in addition, for the following relief:

(1)    To enter a judgment in favor of Fucco and against KidsCare, finding the acts of the KidsCare constitute unlawful intentional disability discrimination in violation of the ADA and CADA.

(2)    To award Fucco, the remedies of damages for back pay, restored benefits, actual monetary damages, loss of wages, salary, retirement contributions, all loss of income, and all loss of monetary damages to which she is entitled, pursuant to a willful violation of the ADA and CADA.

(3)    To award Fucco compensatory damages for emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, future pecuniary losses, and other non-pecuniary losses, and all loss of compensatory damages to which she is entitled, pursuant to the ADA and CADA.

(4)    To award Fucco punitive damages, pursuant to the ADA and CADA.

(5)    To award Fucco reinstatement, or in the alternative, front pay, pursuant to the ADA and CADA.

(6)    To award Fucco attorney fees and costs, pursuant to the ADA and CADA.

(7)    To enter judgment in favor of Fucco on her promissory estoppel claim against KidsCare.

(8)    To award Fucco damages pursuant to her promissory estoppel claim.

(9)    To award Fucco pre-judgment and post-judgment interest at the appropriate rate provided by law.

(10)    To direct the Defendant to take such affirmative relief steps as are necessary to ensure that the effects of the Defendant's unlawful employment practices are eliminated and do not continue to affect Fucco's employment opportunities.

(11)    To award Fucco any and all other legal and equitable relief, to which Fucco is entitled pursuant to any law, that this Court deems just, equitable, and proper.

### VII. JURY TRIAL REQUEST

Pursuant to Fed.R.Civ.P. 38 (a)(b)(c), 42 U.S.C. Section 1981a (a)(1), (b)(1)(2)(3)(D), and (d)(1)(2), and all applicable laws providing for a right to trial by jury, Fucco requests a jury trial of all claims and issues in this action.

Dated: September 22, 2020.

Respectfully submitted,

 Mitchiner Law, LLC

/s/Thomas H. Mitchiner
Mitchiner Law, LLC
1888 N. Sherman St. Suite 200
Denver, CO 80203
Telephone: 720.538.0371
Email: tmitchiner@mitchinerlawllc.com

Murray Law, LLC

/s/ Steven L. Murray
Murray Law, LLC
1888 Sherman Street, Suite 200
Denver, CO 80203
Telephone: (303) 396-9952
E-mail: steven@smurraylaw.com

*Attorneys for Plaintiff Lisa Fucco*

Plaintiff's Address:
3690 Torch Lily St. Wellington, CO 80549